IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **STORMIE M.**[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:21-cv-00586 |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Stormie M. ("Stormie") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. § 1381-1383f. Stormie alleges that Administrative Law Judge ("ALJ") did not properly analyze the medical opinions in the record and failed to use a function-by-function analysis. Stormie also alleges that the Appeals Council erred by refusing to consider additional evidence submitted after the ALJ's decision. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16) and **DENYING** Stormie's Motion for Summary Judgment (Dkt. 15).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

support the Commissioner's conclusion that Stormie failed to demonstrate that she was disabled under the Act.[2] <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); <u>see</u> <u>also</u> <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (quoting <u>Craig v. Chater</u>, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Stormie filed for SSI in February 2019, claiming her disability began on January 1, 2009, due to grand mal epilepsy, severe head trauma in 1994 and 2009, post-traumatic stress disorder ("PTSD"), anxiety, and depression. R. 144, 164. The state agency denied Stormie's applications at the initial and reconsideration levels of administrative review. R. 144–60, 163–81. On

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. <u>See</u> 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

February 23, 2021, ALJ Michael Dennard held a hearing to consider Stormie's claim for SSI. R. 117–43. Counsel represented Stormie at the hearing, which included testimony from vocational expert John Newman. On March 17, 2021, the ALJ entered his decision analyzing Stormie's claims under the familiar five-step process[3] and denying her claim for benefits.[4] R. 95–109.

The ALJ found that Stormie suffered from the severe impairments of epilepsy, chronic lumbar strain and degenerative disc disease, anxiety, depression and substance abuse, and PTSD. R. 98. The ALJ found that Stormie was moderately limited in the broad functional areas of understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. R. 99–100.

The ALJ determined that Stormie's mental and physical impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 98. The ALJ specifically considered listing 1.04 (compromise of a nerve root), listing 11.02 (epilepsy), listing 12.04 (depressive, bipolar, and related disorders), listing 12.06 (anxiety and obsessive-compulsive disorders), and listing 12.15 (trauma- and stressor-related disorders).

The ALJ concluded that Stormie retained the residual functional capacity ("RFC") to perform light work. R. 101. Stormie can lift and carry twenty pounds occasionally and ten

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] Stormie was 38 years old on her alleged onset date, making her a younger person under the Act. R. 107.

3

pounds frequently. Id. She can sit, stand, and walk for six hours in an eight-hour workday. Id. Stormie can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Id. She can never climb ladders, ropes, or scaffolds, work at unprotected heights or around hazardous machinery, or operate a motor vehicle. Id. Stormie can perform simple, routine tasks with simple, short instructions, simple decisions, and occasional workplace changes for two-hour segments. Id. She can occasionally interact with coworkers, supervisors, and the public. Id. She will be off-task about 5% of the time in an eight-hour workday. Id. The ALJ determined that Stormie did not have past relevant work but could perform jobs that exist in significant numbers in the national economy, such as assembler, inspector, and packer. R. 107–08. Thus, the ALJ determined that Stormie was not disabled. R. 108. Stormie appealed the ALJ's decision, and the Appeals Council denied her request for review on September 9, 2021. R. 1–4.

## ANALYSIS

Stormie alleges that ALJ did not properly analyze the medical opinions in the record and failed to use a function-by-function analysis. Stormie also alleges that the Appeals Council erred by refusing to consider additional evidence submitted after the ALJ's decision.

### A. Medical History Overview

1. Medical Treatment

Stormie began behavioral healthcare in August 2016 and received diagnoses of major depressive disorder, generalized anxiety disorder, alcohol dependence, and cannabis dependence. R. 1043–49, 1055. Stormie has a history of trauma, including being a victim of abuse, sexual abuse, domestic violence, and other trauma. R. 1045. As part of her treatment, Stormie participated in group therapy sessions and took medication. R. 1059, 1061, 1077, 1082, 1094, 1114, 1141, 1972, 1979–80. At some of her appointments, Stormie had impaired judgment, little

insight, and notable changes in behavior, functioning, and mood. R. 1065, 1148, 1279, 1317. However, at other appointments, Stormie's mental status exams were normal or without significant change. R. 1076, 1168, 1262, 1303, 1388, 1421, 1749, 1767, 1819.

In January 2017, Stormie was diagnosed with seizures and head trauma. R. 1259. Stormie was prescribed medication for her seizures and was referred to neurology. R. 1218, 1233, 1259, 1404, 1615. In August 2018, Stormie told her provider that she had seizures when working and that high levels of noise and movement triggered her seizures. R. 1216. In August 2019, Stormie reported to the emergency department after experiencing a grand mal seizure that lasted for two to three minutes. R. 1441. During the seizure, Stormie hit her head and bit the inside of her cheek. Id. In November 2020, Stormie told her provider that she averaged one seizure per month. R. 1905.

Stormie also has a history of low back pain she says has plagued her for her whole life. R. 1436. In June 2018, Stormie slipped on a wet floor and landed on her back. R. 1191. An X-ray of her back at that time showed mild degenerative changes in her lumbar spine at L4-5 and L5-S1. R. 1199, 1209. Stormie did not receive injections, surgery, physical therapy, or other consistent treatment for her back pain. R. 1436.

2. Medical Opinions

In October 2019, state agency psychiatrist Howard Leizer, Ph.D., reviewed the record and found that Stormie had moderate limitations in all four functional areas and that Stormie could perform simple, routine tasks with limited social interaction. R. 152, 158. The ALJ found this opinion partially persuasive. R. 106. The ALJ stated that Stormie's testimony and reports to treating physicians show "she had difficulty interacting with others, focusing, and concentrating,

5

and exhibited some abnormalities during consultative examination." Id. However, the ALJ reasoned that Stormie's mental impairments required additional limitations. Id.

In March 2020, state agency psychiatrist Jo McClain, Ph.D., reviewed the record and found that Stormie had mild limitations in understanding, remembering, or applying information, and had moderate limitations in interacting with others, concentration, persistence, or pace, and adapting or managing oneself. R. 172. Dr. McClain found that Stormie could perform simple, routine work. R. 178. The ALJ found this opinion partially persuasive. R. 106. The ALJ reasoned that "the record also supports moderate limitations as to understanding, remembering, and applying information as the claimant reported poor functioning in these areas and exhibited impaired memory during consultative examination." Id.

The ALJ also considered the opinion of Melinda Fields, Ph. D., who performed a psychological examination on Stormie. R. 107. Dr. Fields found that it would be "unlikely that [Stormie] would complete a typical workweek without presentation of psychiatric symptoms" and "unlikely that she would successfully navigate stressors typically encountered in gainful employment[.]" R. 1476. The ALJ found this opinion partially persuasive. R. 107. The ALJ reasoned that Dr. Fields's opinion "is vague, using terms such as 'unlikely.'" Id. Additionally, the ALJ found that the record as a whole supports additional limitations. Id.

In October 2019, state agency physician Jack Hutcheson, M.D., reviewed the record and found that Stormie had no exertional limitations and could frequently climb ramps and stairs. R. 155. Dr. Hutcheson also concluded that Stormie should never climb ladders, ropes, or scaffolds. Id. The ALJ found this opinion unpersuasive. R. 106. The ALJ reasoned that Dr. Hutcheson's opinion is "inconsistent with the record, which supports a light RFC, as the claimant was diagnosed with epilepsy and had numerous seizures[.]" Id.

In March 2020, state agency physician Manish Gambhir, M.D., reviewed the record and found that Stormie could occasionally lift and carry 50 pounds and could frequently lift and carry 25 pounds. R. 175. Dr. Gambhir also concluded that Stormie could frequently climb ramps and stairs but should never climb ladders, ropes, or scaffolds. Id. The ALJ found this opinion unpersuasive. R. 107. The ALJ reasoned that Dr. Gambhir's opinion "is unsupported" and "largely inconsistent with the record[.]" Id.

The ALJ also considered the opinion of William Humphries, M.D., who performed a consultative examination. R. 107. Dr. Humphries concluded that Stormie could occasionally lift 20 pounds and could frequently lift 10 pounds. R. 1439. Dr. Humphries also found that Stormie should not be restricted in her climbing, stooping, kneeling, crouching, or crawling but should avoid heights and hazards. Id. The ALJ found this opinion partially persuasive. R. 107. The ALJ reasoned that the opinion "is consistent with the record in that it continues to support a light RFC." Id. However, the ALJ noted that the record as a whole supports additional limitations. Id.

### B. Medical Opinion Evidence

Stormie argues that the ALJ erred in his consideration of the totality of the medical opinion evidence given by Drs. Hutcheson, Gambhir, Humphries, Leizer, McClain, and Fields. Specifically, Stormie argues that the ALJ "made no attempt to identify what specific entries from the treatment record he was referencing" when analyzing the opinions of Drs. Hutcheson, Gambhir, Humphries, Leizer, and McClain. Pl.'s Br. at 5–6, Dkt. 15-1. Stormie also argues that although the ALJ found Dr. Fields's opinion to be vague, "he noted [no] differences from actual records" and found her opinion "no more persuasive than the opinion of the State agency consultant at the initial level that Plaintiff was only moderately impaired [in] all the mental functioning areas." Id. at 6.

Stormie submitted her application in February 2019, thus, 20 C.F.R. §§ 404.1520c governs how the ALJ considered the medical opinions here.[5] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide, however, that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. Id. "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements. Id.[6]

Here, the ALJ properly considered the opinions of Drs. Hutcheson, Gambhir, and McClain under the new regulations. The ALJ discussed these providers' opinions and provided

---

[5] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

[6] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well–supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

8

specific reasons why he found none of them fully persuasive. Regarding Dr. Hutcheson's opinion that Stormie had no exertional limitations, could frequently climb ramps and stairs, and could never climb ladders, ropes, or scaffolds, the ALJ noted that this opinion was not persuasive. R. 106. The ALJ reasoned that Dr. Hutcheson's opinion was "inconsistent with the record, which supports a light RFC, as the claimant was diagnosed with epilepsy and had numerous seizures, and complained of back pain both at hearing and to treating providers[.]" Id. Regarding Dr. Gambhir's opinion that Stormie could occasionally lift and carry 50 pounds and could frequently lift and carry 25 pounds, could frequently climb ramps and stairs, and could never climb ladders, ropes, or scaffolds, the ALJ noted this opinion was not persuasive. R. 107. The ALJ reasoned that Dr. Gambhir's opinion "is unsupported" and "largely inconsistent with the record, which shows the claimant is more limited than he opined based upon her continued seizure treatment and reported back pain." Id. Regarding Dr. Humphries's opinion that Stormie could occasionally lift 20 pounds and could frequently lift 10 pounds, should avoid heights and hazards, and was unrestricted in her climbing, stooping, kneeling, crouching, or crawling, the ALJ noted that this opinion was partially persuasive. Id. The ALJ reasoned that Dr. Humphries's opinion "is consistent with the record in that it continues to support a light RFC." Id. However, the ALJ further reasoned that "the expanded record as a whole supports additional limitations based upon the claimant's back pain and seizure treatment, as well as her subjective allegations at hearing of associated symptoms." Id.

      The ALJ also properly considered the opinions of Drs. Leizer and McClain under the new regulations. The ALJ discussed these providers' opinions and provided specific reasons why he found neither of them fully persuasive. Regarding Dr. Leizer's opinion that Stormie had moderate limitations in all four functional areas and could perform simple, routine tasks with

9

limited social interaction, the ALJ found this opinion partially persuasive. R. 107. The ALJ reasoned that Dr. Leizer's opinion was "consistent with the record in that it continues to support moderate limitations in all four functional areas" but found that based on the consultative examination, Stormie required additional limitations. Id. Regarding Dr. McClain's opinion that Stormie had a mild limitation in understanding, remembering, or applying information, and moderate limitations in the remaining areas, the ALJ also found this opinion partially persuasive. Id. The ALJ reasoned that Dr. McClain's opinion "is somewhat consistent as the record supports moderate limitations as to interacting with others, concentration, and adapting and managing oneself." Id. However, the ALJ further reasoned that "the record also supports moderate limitations as to understanding, remembering, and applying information as the claimant reported poor functioning in these areas and exhibited impaired memory during consultative examination." Id.

      Stormie argues that the ALJ did not properly cite to the medical record when analyzing the opinions of Drs. Hutcheson, Gambhir, Humphries, Leizer, and McClain. However, "the relevant regulations do not require particular language or adherence to any particular format in a decision, so long as the ALJ reasonably articulates her decision so that a reviewing court can trace the path of the adjudicator's reasoning." Boyd v. Kijakazi, No. 2:21CV29, 2022 WL 949904, at *2 (E.D. Va. Mar. 29, 2022) (internal quotation marks omitted). Here, the ALJ's reasoning is quite clear. The ALJ extensively discussed Stormie's medical records, including her history of epilepsy and back pain. R. 102–05. The ALJ noted that treatment for Stormie's conditions "has been essentially routine, conservative, and successful." R. 105. Specifically discussing Stormie's epilepsy, the ALJ noted that although Stormie has "a long history of epilepsy, the claimant's treatment was routine and conservative in nature, consisting largely of

routine visits with her primary care provider for medication refills without new complaints." Id. Specifically discussing Stormie's back pain, the ALJ noted that although Stormie complained of back pain, R. 103, she "typically had normal gait, station, range of motion of the extremities, and range of motion of the spine." R. 105. Further, the ALJ extensively discussed Stormie's mental impairments and noted that although Stormie had difficulties in all areas of functional capacity, she also had normal mental status examinations and was treated with routine visits with her therapist. R. 99–100, 103–05. Thus, the ALJ appropriately considered the opinions of Drs. Hutcheson, Gambhir, Humphries, Leizer, and McClain and provided a sufficient explanation for his determination that the opinions were not fully supported by and consistent with Stormie's treatment records.

      The ALJ also properly considered the opinions of Dr. Fields under the new regulations. The ALJ discussed Dr. Fields's opinions and provided specific reasons why he found them not fully persuasive. Regarding Dr. Fields's opinions that Stormie would unlikely be able to complete a typical workweek without presentation of psychiatric symptoms or successfully navigate stressors typically encountered in gainful employment, the ALJ noted that these opinions were partially persuasive. R. 107. The ALJ reasoned that Dr. Fields's opinion "is only somewhat consist with the record" because the record supports "social limitations based upon the claimant's reported social anxiety, history of PTSD, and affect and mood abnormalities." Id. However, the ALJ also noted that Dr. Fields's opinion "is vague, using terms such as 'unlikely.'" Id. The ALJ concluded that the record supports more functional limitations than those articulated by Dr. Fields. Id.

      Stormie argues that the ALJ did not cite differences from medical records when concluding that Dr. Fields's opinions were vague. Pl.'s Br. at 6, Dkt. 15-1. However, the

vagueness of Dr. Fields's opinions is a legitimate reason for the ALJ to find her opinion only partially persuasive. Here, the ALJ stated he found Dr. Fields's opinion to be vague because it used terms such as "unlikely." R. 107. Dr. Fields found that it would be "unlikely that [Stormie] would complete a typical workweek without presentation of psychiatric symptoms" and "unlikely that she would successfully navigate stressors typically encountered in gainful employment[.]" R. 1476. The ALJ adequately explained that he discounted Dr. Fields's opinion because Dr. Fields's conclusions regarding Stormie's abilities were vague. Of course, if an ALJ finds a doctor's conclusions unclear, that is a permissible reason to discount those opinions.[7] See Linda M. O. v. Comm'r, No. 2:21cv126, 2022 WL 1830700 (E.D. Va. May 4, 2022) ("[V]agueness is a permissible ground for discounting a medical opinion[.]"); Boyette v. Berryhill, No. 7:17-CV-159-FL, 2018 WL 4689451, at *3 (E.D.N.C. Sept. 28, 2018).

The regulations provide that the ALJ must consider the supportability and consistency of each medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, the ALJ appropriately noted whether each medical opinion was supportable and consistent with the record and provided specific reasoning for why he reasoned as such. R. 106–07. The ALJ adequately explained why he found the opinions not persuasive, and I will not reweigh the evidence. The RFC assessment lies squarely with the ALJ, not with any medical provider or examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 F. App'x 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). To this end,

---

[7] Stormie also argues that the ALJ stated the record supports additional limitations than those noted by Dr. Fields but that the ALJ did not identify what those additional limitations would be. Pl.'s Br. at 6, Dkt. 15-1. However, the RFC includes additional limitations such as Stormie being off task 5% of the time and limiting Stormie to "simple, routine tasks with simple, short instructions, [and] simple decisions[.]" R. 101. The ALJ discussed these additional limitations in the RFC and did not have to specifically identify them when evaluating Dr. Fields's opinion.

when conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the Court defers to the ALJ's decision. Shinaberry v. Saul, 952 F.3d 113, 123 (4th Cir. 2020).

### C. Function-by-Function Analysis

Stormie argues that the ALJ's opinion "lacks a proper function by function analysis." Pl's Br. at 4, Dkt. 15-1. Stormie further argues that "one is left to speculate as to . . . the limitations ultimately assessed for purposes of Plaintiff's RFC." Id. at 7. Specifically, Stormie argues that "[t]he ALJ does not explain how he determined that [Stormie] was capable of simple and routine tasks, when Dr. Fields note[d] that she had 'impaired recent and remote memory and concentration, and slowed pace.'" Id. at 6.

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second

13

Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96-8p and contains sufficient information to allow meaningful review. Unlike the ALJ in Mascio, the ALJ in this case did not fail to consider conflicting medical evidence. Further, the court is "not left to guess about how the ALJ arrived at his conclusions" because the ALJ's findings include a comprehensive analysis of Stormie's medical records, the medical opinions, and the ALJ's conclusions. The ALJ explains how the limitations in the RFC correlate with Stormie's severe physical impairments. Specifically acknowledging Stormie's epilepsy and lower back pain, the ALJ noted that the light levels of exertion accommodate these issues. R. 105. Further, the ALJ found that while Stormie's medical records reflect that she had a history of epilepsy and lower back pain, her "treatment has been essentially routine, conservative, and successful." Id.

The ALJ also properly explained how the RFC accounts for Stormie's mental impairments. Stormie argues that the ALJ "does not explain how he determined that [she] was capable of simple and routine tasks, when Dr. Fields note[d] that she had 'impaired recent and remote memory and concentration, and slowed pace.'" Pl.'s Br. at 6, Dkt. 15-1. However, the ALJ specifically addressed Stormie's limitations with memory, concentration, and pace.

14

Addressing Stormie's moderate limitation in understanding, remembering, or applying information, the ALJ acknowledged that Stormie "had impaired memory during consultative examine." R. 99. However, the ALJ noted that Stormie "took care of her cat, her own personal care, prepared meals, and performed simple chores, all of which require functioning in this area." Id. The ALJ also noted that Stormie had "normal mental status examinations with primary providers." Id. Addressing Stormie's moderate limitation in concentration, persistence, and pace, the ALJ acknowledged that Stormie had poor focus and diminished functioning in this area. R. 100. However, the ALJ noted that Stormie performed "numerous daily activities that require functioning in this area, including cooking, cleaning, and caring for pets." Id. The ALJ also considered the opinions of Drs. Leizer and McClain, who both concluded that Stormie could perform simple, routine tasks. R. 106. The ALJ extensively reviewed Stormie's medical records and considered all medical opinions in evidence to explain how he determined that Stormie could complete simple, routine tasks.

    Stormie also takes issue with the ALJ finding Dr. Fields's opinion no more persuasive than Dr. Leizer's and expresses concern that the ALJ found Dr. Fields's opinion partially persuasive when Dr. Fields was the only doctor to examine Stormie. Pl.'s Br. at 6, Dkt. 15-1. Arguing that substantial evidence does not exist requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit has been clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v.

Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Here, Stormie has done no more than state her position that Dr. Fields's opinion should have been given more weight. Without more, Stormie has not shown that the ALJ ignored or misrepresented the medical record.

Contrary to Stormie's contentions, the ALJ provided a detailed summary of Stormie's physical impairments, medical records, testimony, and opinion evidence. The ALJ was required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Stormie's alleged symptoms, and the medical opinions of record. This narrative discussion allows this court to see how the evidence in the record—both medical and non-medical—supports the RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### D. Additional Evidence

Stormie requests that the court remand this case to the Commissioner to consider new evidence submitted to the Appeals Council after the ALJ's decision. Pl.'s Br. at 7–10, Dkt. 15-1. The additional evidence includes treatment records from New River Valley Community Services dated February 10, 2021 through March 8, 2021, March 18, 2021 through May 20, 2021, and May 27, 2021 through June 10, 2021. R. 20–91. The additional evidence also includes a medical questionnaire completed by Dr. Knotresha Stewart, one of Stormie's treating physicians, on July 15, 2021. R. 9–11. Stormie specifically asserts that the questionnaire completed by Dr. Stewart relates to her "long-term, continuing epileptic seizures, a condition she has suffered with for years including when she had two seizures while under medical care in 2013." Pl.'s Br. at 9, Dkt. 15-1. The Appeals Council denied Stormie's request for review, stating that the evidence dated

16

from February 10, 2021 through March 8, 2021, does not show a reasonable probability that it would change the outcome of the decision and that the other evidence does not relate to the period at issue. R. 2.

The Appeals Council will review an ALJ's decision if it receives additional evidence that is "new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (effective Jan. 17, 2017). The Appeals Council will consider additional evidence only if the claimant shows good cause for not submitting the evidence to the ALJ. Id. § 404.970(b). Evidence is new if it is not duplicative or cumulative and evidence is material "if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). However, the Appeals Council need not review or consider new evidence that relates only to a period after the ALJ issues the decision. See 20 C.F.R. § 404.970. Additionally, the Appeals Council need not explain its reason for denying review of an ALJ's decision. Meyer v. Astrue, 662 F. 3d 700, 702, 706 (4th Cir. 2011). When the Appeals Council denies review, this denial makes the ALJ's decision final, at which point, it is the decision of the ALJ, and not the procedural decision of the Appeals Council to deny review, that is subject to judicial scrutiny. See 20 C.F.R. §§ 404.967–981; Bowles v. Barnhart, 392 F. Supp. 2d 738, 742–43 (W.D. Va. 2005).

This Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve

conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, the Court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. See id. Upon review of records that were before the ALJ and were submitted to the Appeals Council, the Court must determine whether substantial evidence supports the ALJ's decision and whether the submitted evidence may change his conclusion. See Hollar v. Comm'r Soc. Sec. Admin., 1999 WL 753999, 194 F.3d 1304, at *2 (4th Cir. Sept. 23, 1999) (citing Browning v. Sullivan, 958 F.2d 817, 822–23 (8th Cir. 1992)).

Here, the questionnaire[8] supports Stormie's position that her epilepsy is a severe impairment. However, the questionnaire conflicts with the majority of the record evidence, including medical evaluations and Dr. Stewart's treatment notes. Dr. Stewart concluded that Stormie has one seizure per month while compliant with taking her medication. R. 9, 10. Dr. Stewart stated in her treatment notes that Stormie had several periods of time where she did not have one seizure per month. R. 1484 (noting two seizures from September to December 2019); R. 1496 (noting one seizure from May to September 2019); R. 1521 (noting no new seizures from February to May 2019); and R. 1624 (noting one seizure from December 2019 to April 2020). These treatment notes do not align with Dr. Stewart's conclusions on the questionnaire regarding the number of seizures Stormie has per month. The Fourth Circuit has previously

---

[8] While Stormie submitted additional evidence other than the questionnaire, her argument about newness and materiality solely focuses on the inclusion of the questionnaire. Pl.'s Br. at 7–10, Dkt. 15-1. To the extent Stormie intended to address the additional evidence other than the questionnaire, I agree with the Appeals Council's decision that the records dated before March 17, 2021 (the date of the ALJ's decision) are not material and those dated after March 17, 2021 do not relate to the period at issue.

18

concluded that this misalignment "is fatal to a claimant's position." Wiebusch v. Comm'r, No. 20-1590, 2022 WL 2965653, at *4 (4th Cir. July 27, 2022) (per curiam) (unpublished) (citing Russell v. Comm'r, 440 F. App'x 163, 164 (4th Cir. 2011)). Accordingly, substantial evidence still supports the ALJ's conclusion.

## CONCLUSION

It is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection, including the waiver of the right to appeal.

Entered: February 7, 2023

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge